**Andrew M. Calamari**
**Lara S. Mehraban**
**Valerie A. Szczepanik**
**Alexander Janghorbani**
**Alison R. Levine**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**Brookfield Place**
**200 Vesey Street, Suite 400**
**New York, New York  10281**
**(212) 336-5549 (Levine)**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------ x
                                       :

**SECURITIES AND EXCHANGE**     :
**COMMISSION,**                            :     **16 Civ. _____ (   )**
                                         :
                  **Plaintiff,**     :     **ECF CASE**
                                       :
           **- against -**        :     **COMPLAINT**
                                       :
**MATRIX CAPITAL MARKETS, LLC, and**   :     **JURY TRIAL**
**NICHOLAS M. MITSAKOS,**           :     **DEMANDED**
                                       :
                  **Defendants.**    :
                                       :
                                       :
------------------------------------------------------ x

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against

defendants Matrix Capital Markets, LLC ("Matrix Capital") and Nicholas M. Mitsakos

("Mitsakos" and, together with Matrix Capital, "Defendants"), alleges as follows:

<u>**SUMMARY**</u>

1.     From approximately the spring of 2014 to the present (the "Relevant Period"),

Defendants made false and misleading statements to prospective investors and financial

institutions in order to raise funds purportedly for investment vehicles to be managed by Matrix

Capital, an investment adviser registered with the State of California, and Mitsakos, its principal. Defendants' numerous false and misleading statements included lying about investment returns purportedly achieved by Defendants, their assets under management ("AUM"), and their broker and auditor relationships.

2.      For example, during the Relevant Period, Mitsakos told prospective investors that Matrix Capital had as much as $60 million in AUM.  In reality, Matrix Capital did not manage any funds until the fall of 2015, and it never managed anywhere near $60 million.

3.      In addition, Defendants prepared and distributed to at least one client and numerous prospective investors written materials falsely stating that Defendants' investment strategies had yielded annual returns ranging from 20% to more than 66% from 2012 through 2015.  In reality, Mitsakos simply made up these purported returns by creating a model portfolio of hypothetical holdings and trades, not based on actual trading (the "Model Portfolio").  When this Model Portfolio failed to achieve the returns he wanted, Mitsakos retroactively changed the Model Portfolio's fictitious holdings and trades in order to achieve the results he wanted to tout.

4.      Defendants also told prospective investors that their portfolio was audited or otherwise verified by a nationally-recognized auditing firm and that they had prime brokerage relationships with major banking institutions.  In fact—as Mitsakos and Matrix Capital knew or recklessly disregarded—these statements were false.

5.      As a result of their fraud, a Cayman Islands-based asset manager and private merchant banking group ("Investment Manager") and/or its principals gave Defendants approximately $2 million to manage on the Investment Manager's behalf.  Defendants then misappropriated approximately $800,000 of these funds—spending the majority on Mitsakos'

personal and business expenses—in contravention of their representations to the Investment Manager.

## **VIOLATIONS**

6.      By engaging in the conduct set forth in this Complaint:

a.      Defendants Matrix Capital and Mitsakos have violated, and unless enjoined will continue to violate, Section l7(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule l0b-5 thereunder [17 C.F.R. § 240.10b-5];

b.      Defendants Matrix Capital and Mitsakos have violated, and unless enjoined will continue to violate, Sections 206(1), 206(2), and 206(4) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1), 80b-6(2) and 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8];

c.      Defendant Mitsakos has aided and abetted, and unless enjoined will continue to aid and abet, Matrix Capital's violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule l0b-5 thereunder [17 C.F.R. § 240.10b-5], and Sections 206(1), 206(2), and 206(4) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2) and 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

**JURISDICTION AND VENUE**

7.       This Court has jurisdiction over this action pursuant to Sections 15(b), 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77o(b), 77t(b), 77t(d), and 77v(a)], Sections 20(e), 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78t(e), 78u(d), 78u(e), and 78aa], and Sections 209(d), 209(e), 209(f) and 214 of the Advisers Act [15 U.S.C. §§ 80b-9(d), 80b-9(e), 80b-9(f) and 80b-14].

8.       Venue is proper in the Southern District of New York pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], Section 27 of the Exchange Act [15 U.S.C. § 78aa], and Section 214 of the Advisers Act [15 U.S.C. § 80b-14].  Certain transactions, acts, practices, and courses of business constituting the violations alleged herein occurred within the Southern District of New York.  For instance, during the Relevant Period, Defendants sent false and misleading statements into Manhattan by email; made false or misleading statements to prospective investors, investment banks, and brokers based in Manhattan; and misappropriated funds from an account held at a financial services institution based in Manhattan.

9.       Defendants, directly or indirectly, used means or instrumentalities of interstate commerce, of the mails, and/or of the facilities of a national securities exchange in connection with the transactions, acts, practices, and courses of business alleged herein.

**DEFENDANTS**

10.       **Matrix Capital** is a Delaware limited liability company with its principal place of business in San Francisco, California.  Matrix Capital is an investment adviser registered with the State of California.  Matrix Capital purports to have been managing at least one fund and separately managed account since approximately January 2012, referred to herein as the "Matrix Portfolio."

11.    **Mitsakos**, age 56, is a resident of San Francisco, California and is the founder, Chairman, Chief Executive Officer, and Chief Investment Officer of Matrix Capital.  Defendants held Mitsakos out to prospective investors and others as the originator of Matrix Capital's investment strategies, and Mitsakos directed what little actual trading Matrix Capital did.

## OTHER RELEVANT ENTITIES

12.    **Investment Manager** is a Cayman Islands-based asset manager and private merchant banking group.  It serves as the investment manager to a Cayman Islands-based segregated portfolio (the "Fund") of another segregated portfolio company registered in the Cayman Islands.  In March 2015, Investment Manager appointed Matrix Capital as portfolio manager and sub-advisor to the Fund.

## FACTS

### I.   BACKGROUND

13.    Mitsakos formed Matrix Capital in October 2013.

14.    From at least the spring of 2014, Mitsakos began to solicit investors located in California and New York City for the launch of an investment vehicle he referred to at times as a "hedge fund," an "investment fund," and/or a "Long/Short Value-based Investments-Global Micro Fund."  Mitsakos networked with various individuals at brokerage firms and other fund service providers, and asked those individuals to introduce him to potential investors.

15.    In order to solicit investor funds, Defendants orchestrated a scheme in which they falsely marketed Mitsakos and Matrix Capital as experienced money managers with a highly successful track record.

16.    In furtherance of this scheme, during the Relevant Period, Mitsakos created marketing materials to solicit investors, including a monthly Matrix Capital newsletter (the

"Matrix Newsletter").  The Matrix Newsletters that Defendants sent to prospective investors and

a client contained materially false information regarding the Matrix Portfolio's and Defendants'

(1) historical performance; (2) AUM; and (3) brokerage and auditor relationships.

## II.     MISREPRESENTATIONS AND OMISSIONS

### A.     The Matrix Portfolio's Historical Performance

17.     In approximately the spring of 2014, Mitsakos created the Model Portfolio, which

was based on hypothetical holdings and trading, not actual holdings and trading.

18.     When the Model Portfolio did not produce results that Mitsakos believed would

attract investors, Mitsakos retroactively modified the Model Portfolio's hypothetical holdings

and trading to improve the historical monthly and annual performance results.

19.     In the summer of 2014, Mitsakos began sending monthly Matrix Newsletters to

prospective investors.  The Matrix Newsletter contained, among other information, the Matrix

Portfolio's purported yearly and monthly performance results dating back to January 2012.  In

reality, Matrix Capital had not managed any actual assets, and the results Defendants passed off

as the Matrix Portfolio's actual performance were instead a complete fabrication, based on the

retroactive reengineering of the Model Portfolio's holdings and trading.

20.     The Matrix Newsletters listed Mitsakos as the contact person for Matrix Capital

and stated that he was, among other things, responsible "for the oversight and implementation of

Matrix operations and investment strategy" and all investor relations and communications, and

that he reviewed and approved all investment decisions.

21.     During the Relevant Period, Mitsakos continued to retroactively change the

Model Portfolio's hypothetical holdings and trading in order to create the appearance of high

returns.  He sent these purported results—falsely represented as the results of actual holdings and

trading—to registered investment advisers, broker-dealers, prospective investors, including the Investment Manager and/or its principals, who became Defendants' client.  Defendants' false statements concerning the Matrix Portfolio's performance results grew more exaggerated over time.

22.     For example, on November 17, 2014, Matrix Capital sent to prospective investors and financial services firms an email with the subject "Matrix Capital Performance Update: October 2014 -2.7%, YTD +4.0%" and attached a "Matrix Performance Summary as of November 14, 2014," which included the below chart of fictitious returns:

| Performance Details | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Matrix Capital | | | | | | | | | | | | | |
| 2014 | -0.3% | 9.5% | -4.2% | -0.9% | 1.7% | 1.6% | -2.0% | 6.7% | -4.4% | -2.7% | | | 4.0% |
| 2013 | 5.4% | -2.1% | 3.2% | 6.2% | 10.6% | -3.8% | 15.7% | -3.2% | 3.9% | 9.4% | 2.3% | 6.2% | 66.3% |
| 2012 | 11.7% | 5.0% | 3.3% | -1.4% | -3.4% | 3.6% | -2.5% | 4.3% | -1.5% | -2.0% | 2.2% | 4.6% | 25.4% |
| | | | | | | | | | | | | | |
| S&P 500 Index | -3.6% | 4.3% | 0.7% | 0.6% | 2.1% | 1.9% | -1.5% | 3.8% | -0.9% | 2.3% | | | 9.2% |
| DJ CS L/S Equity Index | -1.7% | 2.7% | -2.5% | -1.8% | 1.4% | 0.3% | -0.6% | 0.4% | -0.4% | | | | -2.4% |

23.     On January 9, 2015, Associate A, a Matrix Capital employee, calculated the Matrix Portfolio's year-end performance results for 2014 to be 0.4%—using the hypothetical holdings and trading in the Model Portfolio.  Mitsakos, however, reported different false results to prospective investors a week later, claiming that the Matrix Portfolio was up 19.4% in 2014. This figure not only was fabricated, but it also was materially inflated even over the hypothetical returns generated by Defendants' Model Portfolio.

24.     On July 22, 2015, Associate A sent an email to Mitsakos reporting the Matrix Portfolio's purported returns for various time periods:  117.1% Since Inception; 25.4% 2012; 66.3% 2013; 0.4% 2014; -2.8% Trailing 12 Months; 3.7% 2015 YTD; 24.8% Annualized Since Inception.

25.     Later that day, Mitsakos emailed the Investment Manager the following made up Matrix Portfolio performance numbers, which were materially inflated over the already fabricated returns that Associate A had sent him earlier that day:  199.3% Since Inception; 25.4% 2012; 66.3% 2013; 20.9% 2014; 18.4% Trailing 12 Months; 18.6% 2015 YTD; 35% Annualized Since Inception.

26.     On April 6, 2016, Mitsakos sent a prospective investor a Matrix Newsletter, dated March 31, 2016, which included the following chart, showing year-to-date performance numbers ranging from 20.9% to 66.3% for the years 2012 through 2015:

| Performance Details | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Matrix Capital | | | | | | | | | | | | | |
| 2016 | -2.9% | 2.8% | 0.9% | | | | | | | | | | 0.9% |
| 2015 | -0.3% | 6.7% | -5.3% | 8.4% | 1.8% | 2.0% | 4.6% | 14.5% | 6.5% | 3.4% | 1.0% | 0.3% | 51.1% |
| 2014 | -0.3% | 9.5% | 5.2% | -4.9% | 4.2% | 1.8% | 1.7% | 0.1% | -2.2% | 2.4% | 0.4% | | 20.9% |
| 2013 | 5.4% | -2.1% | 3.2% | 6.2% | 10.6% | -3.8% | 15.7% | -3.2% | 3.9% | 9.4% | 2.3% | 6.2% | 66.3% |
| 2012 | 11.7% | 5.0% | 3.3% | -1.4% | -3.4% | 3.6% | -2.5% | 4.3% | -1.5% | -2.0% | 2.2% | 4.6% | 25.4% |
| 2016 Index | | | | | | | | | | | | | |
| S&P 500 | -5.0% | -0.1% | 6.8% | | | | | | | | | | 1.4% |
| DJ CS L/S | -1.7% | -0.3% | -0.2% | | | | | | | | | | -2.3% |
| 2015 Index | | | | | | | | | | | | | |
| S&P 500 | -3.0% | 5.8% | -1.6% | 1.0% | 1.3% | -1.9% | 2.1% | -6.0% | -2.5% | 8.4% | 0.3% | -1.6% | 1.5% |
| DJ CS L/S | -0.8% | 2.5% | -0.5% | 0.3% | 0.7% | -0.8% | 4.3% | -2.7% | 0.3% | 3.9% | -0.3% | -0.5% | 6.5% |

27.     In June 2016, Mitsakos represented to the same prospective investor that this chart reflected the Matrix Portfolio's performance results from 2012 through 2015, which he claimed was based on trading with his own money and that of friends and family, and since 2015, with institutional investors' money.

28.     These representations were materially false and misleading—Mitsakos did not conduct any actual trading until September 2015, but only pretended to do so through the hypothetical Model Portfolio.  Moreover, the results Mitsakos reported to this prospective investor did not even represent the actual results of the Model Portfolio, but rather results that Defendants had retroactively modified to create the false appearance of higher returns.

29.     During the Relevant Period, Defendants did not tell prospective investors or their client:  (1) that the Matrix Portfolio's performance returns were based on a hypothetical Model Portfolio, not on actual trading returns; or (2) that even this Model Portfolio was manipulated after the fact to increase purported returns.

30.     Moreover—since he ran Matrix Capital and was responsible for preparing the Model Portfolio and for changing its hypothetical returns after the fact—Mitsakos knew (or recklessly disregarded) that the information he was providing to potential investors and a client about the Matrix Portfolio's performance results was materially false and misleading.

**B.     Matrix Capital's Assets Under Management**

31.     During the Relevant Period, Mitsakos also made materially false and misleading statements about the amount of Matrix Capital's AUM.  For example:

a.     During the Relevant Period, Mitsakos represented to potential investors that he started Matrix Capital in 2012 with approximately $10 million of his own money as well as "friends and family money";

b.     In March 2014, Mitsakos represented to a brokerage company that Matrix Capital had or planned to place approximately $35 million in AUM with another institution;

c.     In November and December 2015, Mitsakos sent to potential investors the Matrix Newsletter, which represented that Matrix Capital had $60 million in AUM; and

d.     Between November 2015 and the present, Mitsakos made in-person and over-the-telephone pitches to a potential investor in which he represented that Matrix Capital had approximately $60 million in AUM.

9

32.     Each of these claims was false or misleading.  Matrix Capital received its first and only investor funds (of approximately $2 million) in September 2015.  Prior to that time, Matrix Capital did not have any AUM.

33.     Again, as Matrix Capital's owner and chief investment officer, as well as the person primarily responsible for making and circulating the false and misleading statements, Mitsakos knew (or recklessly disregarded) that the information he provided to potential investors about Matrix Capital's AUM was materially false and misleading.

**C.     The Matrix Portfolio's and Matrix Capital's Brokerage and Auditor Relationships**

34.     During the Relevant Period, and in furtherance of the scheme to make Matrix Capital appear more appealing to potential investors, Mitsakos misrepresented the Matrix Portfolio's and Matrix Capital's relationships with certain brokerage and auditing firms.

35.     For example, in November 2015 and December 2015, Mitsakos' circulated to potential investors Matrix Newsletters dated October 31, 2015 and November 30, 2015, which represented that Matrix Capital used Broker A and Broker B as its "Prime Brokers."  In reality, Matrix Capital did not have a Prime Brokerage relationship with either firm.

36.     In June 2016, Mitsakos told a prospective investor that he used Broker A's platform to place the Matrix Portfolio's trades.  In reality, the Matrix Portfolio never placed a single trade through Broker A's trading platforms and—until September 2015—did not place any trades anywhere.

37.     In June 2016, Mitsakos told a prospective investor that a Big Four auditing firm ("Auditor A") had audited or otherwise verified all of the Matrix Portfolio's performance results provided in a March 31, 2016 Matrix Newsletter.  In reality, none of the Matrix Portfolio's

purported performance results from at least 2012 through 2015 had been audited or otherwise verified by Auditor A; indeed, they were a complete fabrication.

38.     Mitsakos knew (or recklessly disregarded) that the information he provided to potential investors about the Matrix Portfolio's and Matrix Capital's brokerage and auditor relationships was materially false and misleading.

**III.     Misuse of Client Assets**

39.     In early 2015, Mitsakos was introduced to the principals of the Investment Manager.  He subsequently gave the Investment Manager the Matrix Newsletter, which contained the Matrix Portfolio's falsified performance results from 2012 through 2014 and other portfolio information.

40.     On March 4, 2015, the Investment Manager sent Mitsakos a letter of intent, which proposed to appoint Matrix Capital as a sub-adviser to the Fund.  The letter contemplated that the Investment Manager and Matrix Capital would enter into a fee-sharing arrangement and that Matrix Capital would "reserve US$ 500 million of its [long / short equities] trading capacity for [the Investment Manager]."

41.     In March 2015, the Investment Manager and Matrix Capital entered into a Portfolio Management Agreement ("PMA") whereby the Investment Manager appointed Matrix Capital to be the portfolio manager and sub-adviser for the Fund.  According to the PMA, Matrix Capital was required to consult with the Investment Manager before making certain investment decisions regarding the Fund (such as leveraging the investment portfolio of the Fund) and was "at all time[s] . . . subject to the overall supervision" of the Investment Manager.

42.     According to a March 2015 Confidential Private Placement Memorandum ("PPM") relating to the placing of investor shares in the Fund, the Investment Manager was

11

entitled to management fees of 3% and performance fees of 25% per year.  The Investment

Manager, in turn, was responsible for paying fees to Matrix Capital as the portfolio manager.

43.     On March 23, 2015, the Investment Manager and Matrix Capital entered into a

Relationship Agreement whereby the Investment Manager would pay Matrix Capital as the

portfolio manager:

> a.     100% of the management fees for the first $50 million in aggregate value
>
>        of investment in the "Matrix Investment Strategy" by the Fund;
>
> b.     50% of any management fee for any sums in excess of $50 million of
>
>        investment in the "Matrix Investment Strategy" by the Fund; and
>
> c.     50% of the performance fee with respect to all monies invested in the
>
>        "Matrix Investment Strategy" by the Fund.

44.     On September 18, 2015, the Investment Manager and/or its principals provided

approximately $2 million to Matrix Capital to manage on the Fund's behalf.  The Investment

Manager and/or its principals were the sole investor(s) in the Fund.

45.     Shortly thereafter, Mitsakos transferred $1.2 million (or 60% of the investment) to

a brokerage account—held in Matrix Capital's name, not the Fund's—with a "first-loss capital

program"[1] and used those funds to trade securities.  Mitsakos and Matrix Capital traded in the

first-loss capital program from approximately September 2015 through June 2016.

46.     Mitsakos did not invest the remaining 40% of the investor funds, approximately

$800,000, as he had represented to the Investment Manager he would do.  Instead, he

---

[1]     Under this program, a certain New York-based investment adviser agreed to give Matrix
Capital 10:1 leverage, which allowed Matrix Capital to deposit with the investment adviser $1.2
million and trade up to $12 million.  Matrix Capital was to receive a "manager payout" of 85%
of all profits generated (net of administrative and other fees); Matrix Capital was responsible for
100% of any losses.

misappropriated the majority of the remaining funds to pay various personal and business expenses.

47.    By January 2016, Mitsakos had spent approximately $600,000 of the Fund's investment to pay legal bills, credit cards, rent for his home, his Mercedes payment, and other unauthorized personal and business expenses.  These expenses far exceeded the management or performance fees to which Mitsakos was entitled.

48.    In approximately November 2015, the Investment Manager learned for the first time that Mitsakos had invested only $1.2 million of its funds and that Defendants had misappropriated the remaining $800,000.

49.    The Investment Manager subsequently demanded that Mitsakos:  (1) change the name of the first-loss account where the investor funds were being traded from Matrix Capital's name to the Fund's name; and (2) reimburse the Investment Manager for the cash Defendants had misappropriated.

50.    Although Mitsakos eventually returned some of the money Defendants had misappropriated to the Investment Manager, their relationship continued to deteriorate, and in approximately June 2016 the Investment Manager demanded that all of its funds – including those invested with the first-loss capital program – be returned.

## FIRST CLAIM FOR RELIEF
### (Against Defendants Matrix Capital and Mitsakos)
### Violations of Section 17(a) of the Securities Act

51.    The Commission re-alleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 50.

52.    By engaging in the conduct described above, Defendants Matrix Capital and Mitsakos, in the offer or sale of securities, knowingly, recklessly, or negligently, by the use of

means or instruments of transportation or communication in interstate commerce or the mails, directly or indirectly:

        a.     employed devices, schemes, or artifices to defraud;

        b.     obtained money or property by means of untrue statements of material facts, or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

        c.     engaged in transactions, practices or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

53.    By engaging in the foregoing conduct, Defendants Matrix Capital and Mitsakos violated and, unless restrained and enjoined, will continue violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

**SECOND CLAIM FOR RELIEF**
**(Against Defendant Mitsakos)**
**Aiding and Abetting Violations of Section 17(a) of the Securities Act**

54.    The Commission re-alleges and incorporates by reference herein each and every allegation in paragraphs 1 through 50.

55.    By engaging in the conduct described above and pursuant to Section 15(b) of the Securities Act [15 U.S.C. § 77o(b)], Defendant Mitsakos, singly or in concert, directly or indirectly, aided and abetted, and is therefore also liable for Defendant Matrix Capital's primary violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], because he knowingly or recklessly provided substantial assistance to Defendant Matrix Capital's violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

56.     Unless restrained and enjoined, Defendant Mitsakos will again aid and abet violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### THIRD CLAIM FOR RELIEF
**(Against Defendants Matrix Capital and Mitsakos)**
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

57.     The Commission re-alleges and incorporates by reference herein each and every allegation in paragraphs 1 through 50.

58.     By engaging in the conduct described above, Defendants Matrix Capital and Mitsakos knowingly or recklessly, in connection with the purchase or sale of securities, directly or indirectly, by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange:

      a.     employed devices, schemes, or artifices to defraud;

      b.     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

      c.     engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person.

59.     By engaging in the foregoing conduct, Defendants Matrix Capital and Mitsakos, violated and, unless restrained and enjoined, will continue violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

### FOURTH CLAIM FOR RELIEF
**(Against Defendant Mitsakos)**
**Aiding and Abetting Violations of Section 10(b) of the Exchange Act**
**and Rule 10b-5 Thereunder**

60.     The Commission re-alleges and incorporates by reference herein each and every allegation in paragraphs 1 through 50.

61.     By engaging in the conduct described above and pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], Defendant Mitsakos, singly or in concert, directly or indirectly, aided and abetted, and is therefore also liable for Defendant Matrix Capital's primary violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], because he knowingly or recklessly provided substantial assistance to Defendant Matrix Capital's violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

62.     Unless restrained and enjoined, Defendant Mitsakos will again aid and abet violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### FIFTH CLAIM FOR RELIEF
**(Against Defendants Matrix Capital and Mitsakos)**
**Violations of Sections 206(1) and (2) of the Advisers Act**

63.     The Commission re-alleges and incorporates by reference herein each and every allegation in paragraphs 1 through 50.

64.     By engaging in the conduct described above, Defendants Matrix Capital and Mitsakos, while acting as investment advisers, by the use of the means and instrumentalities of interstate commerce and of the mails, directly or indirectly:

      a.     employed devices, schemes, or artifices to defraud clients and prospective clients; and

      b.     engaged in transactions, practices, or courses of business which operate as a fraud or deceit upon clients and prospective clients.

65.     By engaging in the foregoing conduct, Defendants Matrix Capital and Mitsakos have violated, and unless restrained and enjoined will continue to violate, Sections 206(1) and (2) of the Advisers Act [15 U.S.C. § 80b-6(1) and 80b-6(2)].

**SIXTH CLAIM FOR RELIEF**
**(Against Defendants Matrix Capital and Mitsakos)**
**Violations of Section 206(4) of the Advisers Act and Rule 206(4)-8 Thereunder**

66.     The Commission re-alleges and incorporates by reference herein each and every allegation in paragraphs 1 through 50.

67.     By engaging in the conduct described above, Defendants Matrix Capital and Mitsakos, while acting as investment advisers to a pooled investment vehicle, have:

    a.     made untrue statement of material facts or omitted to state material facts necessary to make the statement made, in the light of the circumstances under which they were made, not misleading, to an investor or prospective investor in the pooled vehicle investment; and/or

    b.     otherwise engaged in acts, practices, or courses of business that are fraudulent, deceptive, or manipulative with respect to an investor or prospective investor in the pooled investment vehicle.

68.     By engaging in the foregoing conduct, Defendants Matrix Capital and Mitsakos have violated, and unless restrained and enjoined will continue to violate, Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

**SEVENTH CLAIM FOR RELIEF**
**(Against Defendant Mitsakos)**
**Aiding and Abetting Violations of Sections 206(1), (2), and (4) of the Advisers Act and Rule 206(4)-8 Thereunder**

69.     The Commission re-alleges and incorporates by reference herein each and every allegation in paragraphs 1 through 50.

17

70.     By engaging in the conduct described above and pursuant to Section 209(f) of the Adviser Act [15 U.S.C. § 80b-9(f)], Defendant Mitsakos, singly or in concert, directly or indirectly, knowingly or recklessly aided, abetted, counseled, commanded, induced, or procured Defendant Matrix Capital's violations of Sections 206(1), (2), and (4) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2), 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

71.     Unless restrained and enjoined, Defendant Mitsakos will again aid and abet violations of Sections 206(1), (2), and (4) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2), 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

(a)     finding that Defendants violated the securities laws and rules promulgated thereunder as alleged against them herein;

(b)     permanently restraining and enjoining Defendants, their agents, servants, employees and attorneys and all persons in active concert who receive actual notice of the injunction, and each of them from, directly or indirectly, violating or aiding and abetting violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Sections 206(1), (2), and (4) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2), 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8];

(c)     ordering Defendants to disgorge, on a joint-and-several basis, all ill-gotten gains plus prejudgment interest thereon;

(d)      ordering Defendants to pay civil monetary penalties pursuant to Section 20(d) of the

Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)],

and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)]; and

(e)      Granting such other and further relief as this Court may deem just and proper.


Dated:    August 11 , 2016
          New York, New York

Andrew M. Calamari
Lara S. Mehraban
Valerie A. Szczepanik
Alexander Janghorbani
Alison R. Levine
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York  10281
(212) 336-5549 (Levine)